# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF MICHIGAN

Civil Action No.:

ZHONGXIAO MICHAEL CHEN, an individual,

     Plaintiff,

v.

MICHIGAN STATE UNIVERSITY,

     Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Zhongxiao Michael Chen ("Dr. Chen" or "Plaintiff"), through his counsel, brings this action against Defendant Michigan State University ("MSU") and states as follows:

### **JURISDICTION AND VENUE**

1. This Court has federal question jurisdiction over the action pursuant to 28 U.S.C. §1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391. The employment practices stated here to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Michigan.

3. The action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et seq.* and the Age Discrimination in Employment Act ("ADEA"), as amended, 28 U.S.C. §621, *et seq.*

## ADMINISTRATIVE PREREQUISITES

4. Dr. Chen timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission on September 14, 2022.

5. Dr. Chen received his Notice of Right to Sue on December 12, 2023.

6. Dr. Chen has met and exhausted all administrative prerequisites, and this case is timely filed.

## PARTIES

7. Dr. Chen is a legal resident of the United States, and was, at all relevant ties, a resident of and domiciled in the State of Michigan.

8. Dr. Chen was an employee of the defendant, Michigan State University ("MSU").

9. The defendant in this matter is MSU.

10. MSU is headquartered at 220 Trowbridge Road, East Lansing, Michigan 48824.

11. Defendant may be served pursuant to Federal Rule of Civil Procedure 4(e).

## FACTUAL ALLEGATIONS

12. This is a lawsuit for employment discrimination based on race, national origin, and age.

*General Historical Background*

13. Dr. Chen is 59 years old.

14. Dr. Chen is of Asian descent and is a Chinese American.

15. Dr. Chen was employed as a Senior Academic Specialist at MSU.

16. Dr. Chen also worked as the Regional Quality Assurance Director for North Central from 2000 until his termination in November 2022.

17. Dr. Chen's employment in that role was funded entirely by the grant that supports the IR-4 program.

18. The IR-4 Program was established in 1963 by the U.S. Department of Agriculture ("USDA") to help growers of specialty crops by facilitating the regulatory approval of conventional chemical pesticides and biopesticides to manage insects, plant diseases, weeds, and other pests that reduce crop yield or quality.

19. U. S. Environmental Protection Agency ("EPA") established federal regulation of Good Laboratory Practices ("GLP"), 40 CFR 160, to enforce on residue data study to protect public food safety and public health. The IR-4 Program must comply with GLP.

20. The IR-4 Headquarters is a unit of North Carolina State University ("NCSU"). NCSU is a pass-through entity with the federal government, meaning NCSU is a non-federal entity that provides a subaward to a subrecipient to carry out part of a federal program.

21. NCSU coordinates research activities with four IR-4 Regional Center Subrecipients.

22. MSU is one of the four IR-4 Regional Center Subrecipients.

23. Dr. Chen's position required that he ensure complete compliance with the program's established Standard Operating Procedures ("SOP") and the EPA GLP.

24. Dr. Chen, Quality Assurance Director, was specifically tasked with monitoring and reviewing data and reports to ensure compliance with GLP. Any potential study misconduct or data manipulation was to be reported for corrective action.

25. An analytical laboratory often uses a technique known as manual integration. This is a process by which humans intervene to edit, change, or manipulate data.

26. Manual integration may be used to correct mistakes made by mechanical means, but it is vulnerable to misuse and can result in data manipulation or falsification.

27. Data manipulation or falsification is against the SOP and the EPA's GLP 40 C.F.R. §160. Data manipulation and falsification using manual integration is a federal felony.

28. Per the SOP, Quality Assurance personnel assessed the raw data from the Regional Center's studies and determined if the IR-4 Program's final report reflected the raw data.

29. After the Quality Assurance personnel made their determination, the Testing Facility Management and IR-4 Executive Director would sign a compliance statement, and the data would be submitted to the EPA.

30. On average, Dr. Chen conducted well over one hundred inspections and audits each year.

*Facts Demonstrating a Prima Facie Case of Discrimination Based on Age, Race, and National Origin*

31. Prior to 2016, Dr. Chen had, in accordance with his job description, performed audits where he discovered manual integrations of data at the MSU Analytical Laboratory. Instead of investigating the reports Dr. Chen made, management removed him from auditing analytical summary reports and analytical raw data from the lab. Dr. Chen did not perform the lab audits from 2016 until 2021.

32. Animosity towards persons of Asian descent, particularly ethnically Chinese people, became apparent during the Coronavirus.

33. Dr. Chen felt this animosity directed at him because of his race and national origin in every aspect of his life, including in his work at MSU, where he watched MSU release several colleagues of Asian descent and replace them with Caucasian employees during this period. He feared something similar would happen to him.

34. In January 2021, one of Dr. Chen's coworkers resigned and Dr. Chen was tasked with handling some of her job duties.

35. Dr. Chen was asked to conduct an audit of two final reports from the lab.

36. In the findings for the audit of the final report, 'Flonicamid: Magnitude of the residue on Pomegranate' Dr. Chen noted manual integration occurrences.

37. Dr. Chen's report of these discrepancies should have earned him praise for protecting the program's academic and scientific integrity. Instead, his report had the opposite effect.

38. Through Freedom of Information Act ("FOIA") requests, Dr. Chen later learned that after his report management began having secret meetings, seeking a reason to terminate him.

39. In March 2021, MSU supervisor Dr. John Wise discussed three ways to terminate Dr. Chen: 1) if he was found guilty of professional misconduct, 2) if his performance reviews stated he was not meeting expectations, and 3) if his position was no longer funded.

40. Shortly after making his report, and shortly after this email, Dr. Chen was accused of negligence in GLP audit procedures.

41. Dr. Chen was investigated for failing to properly retrieve and analyze raw data from the archives, however, this is not a requirement under EPA regulations or the SOP. Additionally, Dr. Chen audited enough raw data supplied in the analytical summary report to determine manual integrations had occurred.

42. The independent investigation in April 2021 cleared Dr. Chen of intentional professional misconduct but left open other implications he was unable to address.

43. In an email dated March 8, 2021, Mr. Jerry Baron stated that Dr. Chen provided substandard work, he was actively hindering the quality assurance department during a period of low capacity, and it was difficult to justify funding his position.

44. Dr. Chen was surprised by this email, as he had not received any coaching or negative performance reviews up to that point and had performed more audits himself than the entire rest of the team combined. Dr. Chen had completed 79 reports and inspections in

2020, while the four other Quality Assurance professionals had completed a combined total of 56 audits and inspections in that time period.

45. In May 2021, Dr. Chen received a score of "does not meet expectations" on his performance evaluation for the first time in his entire twenty plus year period with MSU.

46. Dr. John Wise cited refusal to travel during the height of the coronavirus pandemic as a reason for Dr. Chen's low rating, however, travel was not a requirement, and other Caucasian Quality Assurance professionals were not required to travel to complete their audits.

47. Also cited were failure to timely respond to emails, refusal to take a phone call, and an inappropriate email, however, Dr. John Wise was unable to provide any evidence of these accusations, and Mr. Chen's responses were at least as fast as his Caucasian colleagues.

48. Dr. Chen requested that his annual review to be changed to "meets the expectations" but his request was refused.

49. In November 2021, Dr. Chen received a letter stating that his position would be terminated, effective November 18, 2022, due to lack of funding.

50. Dr. Chen's responsibilities were assumed by a Caucasian employee after his termination.

51. The Regional Center appointed a younger Caucasian employee to perform Dr. Chen's equivalent position.

52. Dr. Chen raised his concerns to various offices in the university administration and was repeatedly dismissed by MSU staff and employees.

53. At the time of Dr. Chen's termination, he was a mere two years away from retirement.

## CAUSES OF ACTION

**Count I: Discrimination on the Basis of Race and National Origin in Violation of**

**Title VII**

54. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

55. Under Title VII of the Civil Rights Act of 1964, it is unlawful to discriminate against an employee because of race or national origin.

56. Dr. Chen is a naturalized U.S. Citizen from China.

57. Dr. Chen had the necessary qualifications, education, and experience for the Quality Assurance Unit Director for North Central Region, as is evidenced by the fact that he held Quality Assurance Professional roles for over twenty years.

58. MSU terminated Dr. Chen and replaced him with a younger, Caucasian, natural born U.S. Citizen.

59. MSU filled the equivalent position, Regional Field Director, with a younger, Caucasian, natural born U.S. Citizen.

60. As a direct result of Defendant's discriminatory acts against him, Dr. Chen was harmed.

**Count II: Discrimination on the Basis of Age in Violation of the ADEA**

61. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

62. The Age Discrimination in Employment Act prohibits discrimination based on age. It protects employees who want to still compete on an equal footing in the labor market.

63. Dr. Chen is 59 years of age.

64. Dr. Chen was 2 years away from retirement.

65. Dr. Chen had the necessary qualifications, education, and experience for the Quality Assurance Unit Director for the North Central Region, as is evidenced by the fact that he held various Quality Assurance Professional roles for over twenty years.

66. MSU terminated Dr. Chen and replaced him with a younger, Caucasian, natural born U.S. Citizen.

67. MSU filled the equivalent position, Regional Field Director, with a younger, Caucasian, natural born U.S. citizen.

68. As a direct result of Defendant's discriminatory acts against him, Dr. Chen was harmed.

## DAMAGES

69. Dr. Chen's damages include backpay for the period he was without a job after his termination from MSU.

70. Dr. Chen's damages include the full retirement benefits he would receive after 25 years of service at MSU.

71. Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate his further damages.

72. Plaintiff's non-economic damages include pain and suffering, for the emotional distress, embarrassment, anxiety, insomnia, depression, and stress which resulted from Defendant's actions.

## PRAYER FOR RELIEF

73. After incorporating all the above into this section, Dr. Chen prays for the following relief:

    a. That he receive the appropriate backpay for the period he was without a job after his termination from MSU and relocation fees to a new job

    b. That he receive the full retirement benefits as he would receive after 25 years of service at MSU.

    c.   Compensatory damages for emotional distress, harassment, inconvenience,

         anxiety caused by the discrimination, insomnia, depression, and stress resulting

         from Defendant's actions.

    d.   Punitive damages as available.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**


Dated: March 11, 2024


Whitcomb, Selinsky, P.C.


By: *William Selinsky*
William Selinsky, Esq.
Whitcomb Selinsky, PC
2000 S. Colorado Blvd.
Tower 1, Suite 9500
Denver, CO 80222
Tel: 303.534.1958
Fax: 303.534.1949
wselinsky@whitcomblawpc.com
*Counsel for the Plaintiff Zhongxiao Michael Chen*
